October 4, 2007

Bruce Beuchler, Esquire
Lowenstein Sandler PC
65 Livingston Avenue
Roseland, New Jersey 07068

Anthony J. LaBruna, Esquire
United States Attorney's Office
970 Broad Street - Suite 700
Newark, New Jersey 07102

                            Re:    KI Liquidation, Inc. f/k/a
                                   Kullman Industries, Inc.
                                   Case No. 05-60002

                                 Motion to Compel Payment of Reasonable
                                 Attorney's Fees and for Other Relief
                                 Document #439

Counselors:

      This matter comes before the court on motion of the Trustee of KI Liquidation ["the Trust"] for an order (1) enforcing confirmation order and permanent injunction, (2) holding the United States Department of State ["the US" or "the Government"] in contempt of court and (3) compelling payment of reasonable attorney's fees and costs. The Trustee's arguments are all based on the same provision, a permanent injunction, in the Plan (Section 10.04.2) and in the confirmation order

(paragraph 15). The permanent injunction provides, in relevant part, that "all persons who have been, are, or may be holders of claims against or interests in the debtor arising prior to the effective date, and all creditors and interest holders" are prohibited from commencing any action against the Debtor, the estate, the trust, or trustee. (Order Confirming Debtor's Second Amended Plan of Reorganization at 15). The Trustee argues that the US has violated this provision of the plan by asserting counterclaims in the Court of Federal Claims, based on claims arising prior to the effective date of confirmation, seeking liabilities against the Debtor in the form of civil penalties and the forfeiture of the Debtor's claims. (Trustee's Motion at 5, 6).

These parties have a shared history that extends back before the petition date of October 17, 2005. The predecessor to the KI Liquidation, Kullman Industries ["Kullman"], was contracted in August 2002 to construct a US Embassy Building in Tajikistan. For disputed reasons not pertinent here, either one or both parties terminated the contract without full performance. Shortly thereafter, the Government acknowledged the termination and indicated that it would seek to recover damages arising from "refusal and failure to complete work within specified time." (Government's Reply at 3).

In its bankruptcy petition, Kullman did not list the Government as a creditor, not even as a contingent, disputed or unliquidated one. Kullman unpersuasively claims that this failure to list the Government as a creditor is because Kullman was unaware of the Government's potential claim. Nonetheless, communications between Kullman and the Government continued, and it appears that the Government became actually aware of Kullman's bankruptcy filing at some point. The

Government did not participate in the bankruptcy filing in any way other than to receive service of some documents delivered variously to the attorney on the file at the Department of State, the US Attorney in District of New Jersey and the US Attorney General. Again, the Government did not file a notice of appearance, did not file a proof of claim, and did not vote or take a position on the plan either because the manner in which it was served lead to some communications breakdown between agencies or, less credibly, because it believed that the specific language of the plan did not affect the US claim.

The US objects to the relief sought by the Trustee. Primarily, it argues that this court lacks jurisdiction to enter the order requested because of the doctrine of sovereign immunity. It also argues that the language of the confirmation order so closely tracks the language of discharge, that any provision creating a release that could not be discharged should be unenforceable . As a fallback, the US argues that it was not properly served and that the language of the plan injunction should not be read so broadly as to preclude assertion of defensive counterclaims.

The Trustee counters that 106 creates a statutory waiver of sovereign immunity in this instance because that section includes within its scope 1141 and the effect of confirmation. The Trustee also argues that the Debtor did not serve the Government because it was sure that its claims against the government eclipsed any claims that the government might assert against it, and that regardless, the Government had actual notice of the bankruptcy filing and the terms of the plan.

These last arguments by the Trustee are the least persuasive. The government was not an "unknown creditor" as of the Date of Filing no less the date of confirmation. The Debtor had actual notice that the government had reserved its rights to assert a claim against it and the Code provides a simple mechanism for debtors to name potential claimants as creditors and ensure notice. The fact

that the Government may have had actual notice of the pendency of the bankruptcy proceeding or even the terms of the plan originally proposed, is not sufficient because it was a known creditor of the Debtor that did not get formal notice. Reliable Elec. Co., Inc. v. Olson Const. Co., 726 F.2d 620, 622 (C.A.Colo. 1984)("[A]lthough the [creditor's] attorney was generally aware of the [debtor's] involvement in reorganization proceedings," formal notice was necessary.)

The real discussion centers around the thrust and parry over sovereign immunity. "Waivers of the Government's sovereign immunity, to be effective, must be 'unequivocally expressed.' " U.S. v. Nordic Village Inc., 503 U.S. 30, 33 (1992) (*citing* Irwin v. Department of Veterans Affairs, 498 U.S. 89, 95 (1990)). Neither are they to be "liberally construed." Id. Agencies of the sovereign are immune to the extent that the doctrine of sovereign immunity pertains to the branch of government asserting immunity. F.D.I.C. v. Meyer, 510 U.S. 471, 472 (1994)("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.")

The Trustee claims that the Government unequivocally and clearly waived its sovereign immunity by statute. Section 106(a) provides that sovereign immunity is waived and the Court is allowed jurisdiction over the Government but only in the application of particular sections of the Code, including 1141. 1141(a) provides:

> Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

The Trustee claims this section created a clear and unequivocal waiver of statutory immunity because the plan clearly and unequivocally barred assertion of the claims the US currently seeks to assert. Unfortunately, the injunction upon which the Trustee relies was not so clear. The injunction prevents parties from "commencing, conducting, or continuing in any manner...or any other proceeding against the Debtor..." (Order Confirming Debtor's Second Amended Plan of Reorganization at 15). Additionally, "all suits, actions, and proceedings that are pending as of the effective date" shall be withdrawn or dismissed. Id. The injunction also enjoins parties from "asserting any right of setoff or recoupment." Id. However, none of these provisions account for counterclaims or defenses asserted by a party in a suit initiated by the Debtor itself. The Government alleges that its counterclaims are really just defenses. While this may or may not be accurate, there is still no indication that the Government is violating the Plan, especially in light of the fact that the Debtor is the one commencing the proceedings in the Federal Court of Claims. The Trustee would have the Court allow it to bring suits against parties but not allow the parties to defend themselves or assert counterclaims.

The Trustee cites to In re SunCruz Casinos, 342 B.R. 370, 380 (S.D.Fla. 2006), to show that the Government should be bound by the Plan. In that case, the court held that a creditor was prohibited by a provision in the Plan from asserting its setoff rights. That the scope of the injunction in SunCruz applied to set off claims in that case was considerably more clear than the scope of the injunction applied to the Government claims asserted here. The creditor in that case had received a notice fixing Administrative Expense Claim bar dates and specifically an Extended Administrative Expense Claim bar date to which it simply did not respond. Id. at 381. Moreover, in reaching its conclusion, the SunCruz court pointed out that the creditor had the full opportunity

5

to review the final disclosure statement and the plan and voted against it. Id. The persuasiveness of that case is greatly diminished under the facts presented here, where notice to the US and the purpose of the injunction as pertains to a possibly fraud- based claim were somewhat dodgy at best.

The Debtor did not list the Government as a potential creditor. There are cases that have said a creditor can be bound by a Plan even in the absence of a proof of claim, but only in those circumstances where the amount of the claim is at issue rather than the validity of the claim itself. Dycoal, Inc., v. IRS, 2006 WL 360642, at *11 (W.D.Pa. Feb. 15, 2006). The more general rule is that a party is not bound by the plan and confirmation order if notice was not properly given. "A creditor, who has general knowledge of a debtor's reorganization proceeding, has no duty to inquire about further court action. The creditor has a 'right to assume' that he will receive all of the notices required by statute..." Reliable Electric Co., v. Olson Construction Co., 726 F.2d 620, 622 (10th Cir. 1984).

It is frustrating to the court, and undoubtedly to the parties, that there does not appear to be a solid answer as to why the Government was not served at least as a disputed creditor and why the Government did not get object to confirmation of the plan of which it had actual notice if the language of the injunction was remotely subject to interpretation. The record indicates that the behavior by both sides here was less than ideal. Since any waiver of sovereign immunity must be narrowly construed, however, the court cannot find a clear and unequivocal waiver where there are questions about the adequacy of notice. "...[W]here Congress has waived the Government's immunity, it may also define and limit the conditions under which suits may be brought." In re F.C.M. Corp., 1987 WL 364456, at *2 (S.D.Fla. Sept. 22, 1987)(*citing* United States v. One (1) Douglas A-26B Aircraft, 662 F.2d 1372, 1375 (11th Cir. 1981)). . "The requirement of proper

service on the United States is a condition to waiver of sovereign immunity, and as such, is necessary in order to obtain jurisdiction over the United States." Id. *See*, Honda v. Clark, 386 U.S. 484, 501 (1967). "These conditions must be strictly construed, with no exceptions implied." Id. (*citing* United States v. Sherwood, 312 U.S. 584 (1941)) This type of strict construction seems particularly important where, as here, the plan provision at issue is inconsistent with other provisions of the Code. [1] 11 U.S.C. § 1141(d)(6).

The Trustee does not dispute that the Government notified the Debtor in May 2005 that it would be in default if it did not cure. In June 2005, the Department of State ["the DOS"] notified the Debtor that the Embassy Contract *i.e.* the Tajikistan Project, had been terminated and the Debtor was responsible for any damages because of failure to complete the contract in time. On June 18th, Debtor was given further notice that damages would be assessed if it did not complete the project by June 20th. August 3rd, the DOS began debarment procedures against Debtor and its president (Kullman) for making false statements to the DOS on the progress of the contract. Debtor responds in its papers by saying that at the time of the petition, the Debtor was only aware that it might be a creditor of the Government by not the other way around. This assumption was based on "DOS draft reports" that the Debtor was entitled to $600,000. Exhibit A of Debtor's reply to Government's Opposition. Clearly, the issue of the claim itself and who owes whom money is not going to be determined in this Court and is currently being litigated in the Federal Court of Claims. However, this much can be said: the Debtor should have been aware of the potential claims the Government

---

[1] The Trustee's argument that the court made a binding finding that the plan comports with all provisions of the Code might be more forceful is the party most likely to object to the provision in this plan that is inconsistent with the Code received adequate notice and opportunity to object.

may have against it through the correspondence it received. Reasonable diligence on the part of the Debtor was all that was required and it would have yielded the same conclusion. The fact that the Debtor thought it may be a creditor of the Government does not mean the Government cannot have any claims against it. Debtor should have served the Government with proper notice, which meant serving the DOS along with the US Attorney General and the US Attorney for the Dist of NJ. Although the Government certainly knew about the bankruptcy proceedings, being aware of the bankruptcy proceeding cannot suffice as the formal notice that is required here.

Aside from the strict requirements for interpretation and notice, the fact that the claim that the government seeks to assert in the Court of Federal Claims is based on fraud also cuts against the Trustee's position. 11 U.S.C. § 1141(d)(6) prevents the discharge of debts to the US based on fraud. While this Court is not determining whether the Debtor engaged in fraud, public policy cannot support an injunction that would preclude the US from asserting a counterclaim that a contractual obligation that the debtor seeks to recover from the Government was incurred by debtor fraud. Beyond the notice problems, the fact that the permanent injunction the Trustee seeks to enforce in this instance would enjoin claims otherwise not eligible for discharge feels distinctly uncomfortable in light of such strongly expressed public policy.

Finally, the Trustee asks that the Court use its powers under §105 to enforce the Confirmation Order. §105 "enables a bankruptcy court to apply equitable principles which are "necessary or appropriate' in a particular case to carry out the provisions of the Bankruptcy Code." Estate of Daily v. Title Guar. Escrow Service, Inc., 178 B.R. 837, 843 n.8 (D.Haw. 1995). The Court cannot use this section to enforce a provision that is not consistent with the Code as in this instance.

Neither the Debtor nor the US comes before the court with perfect procedural history. Unfortunately for the KI Liquidation, the requirement that waiver of sovereign immunity be clear, unequivocal and narrowly construed means that the consequences of the Debtor's lacunae are more profound.  The Trustee's motion will be denied with the standard order.

*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
US Bankruptcy Judge